138 F.3d 1209
 Katherine R. NAPLETON, not individually, but as Trustee
under the Katherine R. Napleton Revocable
Self-Declaration of Trust dated October
1, 1992, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellee.
 No. 96-3355.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 22, 1997.
Decided March 18, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied May 19, 1998.*
 
 William R. Quinlan (argued), John F. Kennedy, James A. Niewiara, Quinlan & Crisham, Chicago, IL, for Plaintiff-Appellant.
 James H. Schink, Robert B. Ellis (argued), Kirkland & Ellis, Chicago, IL, for Defendant-Appellee.
 Before CUDAHY, KANNE, and DIANE P. WOOD, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 Katherine Napleton appeals from a district court order dismissing her action without prejudice to allow for arbitration. She asserts that the district court misconstrued the scope of the arbitration clause and referred a non-arbitrable issue to arbitration. But because the district court issued its order favoring arbitration in the course of an "embedded" proceeding, we lack jurisdiction to reach these issues.
 
 I. Background
 
 2
 In 1955, General Motors Corporation leased property in Hinsdale, Illinois, from New England Life Insurance Company. The lease provided for an initial twenty-year rental term that ended on December 31, 1975. General Motors then had the option to renew the lease, first for a ten-year term ending on December 31, 1985, and then for a series of five-year terms, with the final one ending on December 31, 2005. General Motors had incentive to renew, because the lease specified fixed rental rates that decreased over time.[1] Not surprisingly, General Motors thrice renewed with New England, extending the lease through December 31, 1995.
 
 
 3
 New England transferred its fee interest in the Hinsdale property to Edward Napleton in December 1992. The day after Edward received the property, he conveyed it to his wife, Katherine Napleton.[2] Katherine also acquired from New England six properties outside of Illinois. New England had leased these other properties to General Motors as well.
 
 
 4
 In June 1993, New England notified General Motors that it had assigned the Hinsdale lease to Edward and the non-Illinois leases to Katherine. New England's letter provided that General Motors should contact Edward whenever the Hinsdale lease required "payment, notice, demand or other communication" and Katherine when the non-Illinois leases so required. New England supplied the same address for both Edward and Katherine.
 
 
 5
 Although General Motors did not receive written notice that Edward had conveyed the Hinsdale property to Katherine, it nonetheless acted as though it knew Katherine was the owner. In September 1993, and February and December 1994, General Motors mailed Katherine statements of insurance for the Hinsdale property, as required by the lease. These statements listed Katherine as an additional insured. And in 1993, General Motors began to pay rent for the Hinsdale and non-Illinois properties with a single check made payable to Katherine.
 
 
 6
 The Hinsdale lease provided that to renew for a third five-year term that would extend until December 31, 2000, General Motors must notify the lessor by December 31, 1994. But on October 24, 1994, General Motors sent a written renewal notice to Edward--not Katherine--at the address previously provided by New England. When Edward failed to respond, General Motors, on January 17, 1995, sent him a copy of the October 24 renewal. On February 2, Edward informed General Motors that Katherine owned the Hinsdale property and that all notices should be sent to her. Finally, on February 16, General Motors mailed Katherine a copy of the October 24 renewal notice.
 
 
 7
 Katherine did not respond immediately. Instead, in June 1995, she informed the company that she did not consider it to have renewed the lease and that it should vacate the property on December 31, 1995, the end of its current term. General Motors replied that it would not surrender the property; as far as it was concerned, the lease had not expired.
 
 
 8
 On December 15, 1995, Katherine filed for declaratory and injunctive relief in the Circuit Court of Cook County, Illinois. General Motors removed the action to federal district court. General Motors then argued that an arbitration clause in the lease governed its dispute with Katherine and it presented to the district judge a motion to dismiss or stay the action pending arbitration. The district judge agreed that the arbitration clause applied. Accordingly, he issued an order "grant[ing] the motion to dismiss without prejudice to allow for arbitration." Order of 7/29/96. After the district court denied Katherine's motion for reconsideration, she filed this appeal.
 
 
 9
 Katherine challenges the dismissal on the grounds that: (1) no issue falls within the scope of the arbitration clause and; (2) the district court has referred to an arbitrator the question whether an enforceable contract exists, which is an issue only a court may determine. Katherine also suggests that the record would allow us to decide as a matter of law that she is entitled to relief. We do not reach these arguments because we lack jurisdiction over Katherine's appeal.
 
 II. Discussion
 
 10
 Katherine asserts that we have jurisdiction pursuant to 28 U.S.C. § 1291, which allows appeals from the final decisions of district courts. But we cannot take jurisdiction under § 1291 without first considering the Federal Arbitration Act, which controls the appealability of arbitration decisions by district courts. See 9 U.S.C. § 16. In general, the Act favors arbitration by assuring that appellate courts quickly review orders denying arbitration so that the parties may proceed promptly to an arbitrator if the district court has erred. See Perera v. Siegel Trading, 951 F.2d 780, 783 (7th Cir.1992). As for orders compelling arbitration, final decisions are appealable and interlocutory decisions are not.[3] See id. Because § 16 does not define "final decision," we have announced that it is a "legal term of art" animated by prior judicial opinions. Id.; see Amgen, Inc. v. Kidney Ctr. of Del. County, Ltd., 95 F.3d 562, 565 (7th Cir.1996). Thus, to grapple with the implications of Katherine's dismissal without prejudice, we must look to our own precedents as well as to those of other circuits.
 
 
 11
 According to Katherine, the alpha and omega of the jurisdictional issue is that the district court dismissed her case, thereby divesting itself of jurisdiction and terminating all proceedings before it. But this alone cannot be dispositive, because we traditionally have distinguished between "independent" and "embedded" proceedings. In an independent proceeding, the request to compel arbitration is the sole issue before the district court. In an embedded proceeding, the motion for arbitration is made in the course of a larger, substantive suit. See Perera, 951 F.2d at 784-85. Here General Motors requested arbitration in the context of Katherine's action for declaratory and injunctive relief. Hence Katherine has appealed from an embedded proceeding.
 
 
 12
 To date the distinction between independent and embedded proceedings has had a talismanic significance in our jurisprudence. We consistently have found jurisdiction over appeals from arbitration orders in independent proceedings and have declined to find jurisdiction over appeals from arbitration orders in embedded proceedings. Compare S+L+H S.p.A. v. Miller-St. Nazianz, Inc., 988 F.2d 1518, 1523 (7th Cir.1993) (finding jurisdiction over an appeal from an independent proceeding), with Wilson Wear, Inc. v. United Merchants & Mfrs., Inc., 713 F.2d 324, 326 (7th Cir.1983) (holding that an order granting a stay and compelling arbitration in an embedded proceeding is not final within the meaning of 28 U.S.C. § 1291), and Whyte v. THinc Consulting Group Int'l, 659 F.2d 817, 818 (7th Cir.1981) (same). In some cases, our refusal to extend jurisdiction over appeals from arbitration orders in embedded proceedings is unremarkable; the order to arbitrate is akin to a "case management order" that does not touch on the merits of the claim and thus much work remains for the district court. See In the Matter of Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 784 F.2d 831, 833 (7th Cir.1986). However, we have even declined to find jurisdiction over an appeal from an embedded proceeding when the practical result of the order to arbitrate was to refer all claims to the arbitrator and terminate proceedings before the district court. See Perera, 951 F.2d at 785; see also Humphrey v. Prudential Sec. Inc., 4 F.3d 313, 317-18 (4th Cir.1993). Katherine's appeal, however, adds an unfamiliar ingredient to the garden variety embedded proceeding. In most embedded proceedings, the district court stays the action pending arbitration; here the judge substituted a dismissal without prejudice for the usual stay. Thus we must decide whether, in the context of an embedded proceeding, a dismissal without prejudice "to allow for arbitration" constitutes an appealable--i.e. final--decision.
 
 
 13
 Other circuits have addressed similar questions, though there is no unanimity in their answers. Both the Tenth and Third Circuits have held that a dismissal in favor of arbitration is an appealable decision, even in an embedded proceeding. See Armijo v. Prudential Ins. Co. of America, 72 F.3d 793, 797 (10th Cir.1995); Nationwide Ins. Co. of Columbus, Ohio v. Patterson, 953 F.2d 44, 46 (3d Cir.1991); see also Arnold v. Arnold Corp., 920 F.2d 1269 (6th Cir.1990) (finding jurisdiction when the district court ordered arbitration, dismissed the proceedings and entered a Rule 54(b) judgment). In contrast, the Ninth Circuit has found that it lacks jurisdiction over an appeal from a dismissal in an embedded proceeding when the dismissal effectively requires the parties to arbitrate. See McCarthy v. Providential Corp., 122 F.3d 1242, 1244 (9th Cir.1997). Other circuits, while not expressly addressing the impact of a dismissal, seem to have hung their respective jurisdictional hats on the distinction between embedded and independent proceedings. See, e.g., In re Pisgah Contractors, Inc., 117 F.3d 133, 136 (4th Cir.1997) ("The issue of whether an order compelling arbitration may be immediately appealed as a 'final decision,' then, depends on whether the order was issued in an 'independent' action ... or ... an 'embedded' action...."); Altman Nursing, Inc. v. Clay Capital Corp., 84 F.3d 769, 771 (5th Cir.1996) ("The appropriate test of finality is whether the order involved an independent or embedded proceeding. An order involving an embedded proceeding is always an interlocutory order; an order involving an independent claim is always final."); Gammaro v. Thorp Consumer Discount Co., 15 F.3d 93, 96 (8th Cir.1994) (adopting a "bright-line rule" based on the distinction between independent and embedded proceedings).
 
 
 14
 For reasons that we explicate below, we elect to follow the Ninth Circuit and those other courts that have effectively determined that the jurisdictional lodestar of appealability is whether the decision favoring arbitration is from an independent or from an embedded proceeding. Accordingly, we hold that it is the nature of the underlying action, not the style of the district court's decision requiring arbitration, that determines whether we have jurisdiction over appeals from decisions granting arbitration. We will continue to find jurisdiction over appeals from independent proceedings and decline to find jurisdiction over appeals from embedded proceedings.
 
 
 15
 This conclusion comports with our own case law. In Perera, we repeatedly emphasized the significance of the distinction between independent and embedded proceedings.[4] See, e.g., 951 F.2d at 785 ("In fact, this court has found jurisdiction where the sole issue before the [district] court was arbitration and denied jurisdiction where arbitration was raised in an embedded proceeding."); id. ("[Prior] cases demonstrate that this court finds arbitration orders final if arbitration is the sole issue before the court and interlocutory if raised in an embedded proceeding."). Perera's discussion of prior cases further illustrates that this Circuit has focused, almost myopically, on whether a proceeding is independent or embedded. For example, Perera discussed the extension of jurisdiction in Snyder v. Smith, 736 F.2d 409 (7th Cir.1984). See Perera, 951 F.2d at 785. There the district court dismissed the action in favor of arbitration. But what Perera found most significant about Snyder was not the dismissal, but that "arbitration was the only issue before the [district] court." Perera, 951 F.2d at 785. And to the extent that any case predating § 16 of the Federal Arbitration Act implies that an arbitration order in an embedded proceeding would be "final" if it resulted in the dismissal of an action, see, e.g., Wilson Wear, 713 F.2d at 326, Perera suggests that such language is inapplicable in light of the Act. See 951 F.2d at 785 (disregarding this court's prior statement that an arbitration order is final if it terminates all proceedings before the district court) (citing In re Chicago, 784 F.2d at 833). In Perera we described the effects of appeals from independent and embedded proceedings; today we steadfastly adhere to that delineation.[5]
 
 
 16
 We also refused in Perera to elevate the form of a district court's order over its substance. There the district judge seemingly wanted the appellate court to extend jurisdiction over Perera's appeal--the judge entered a Rule 54(b) judgment with respect to his order compelling Perera to arbitrate and also invited this court to grant jurisdiction pursuant to 28 U.S.C. § 1292(b). See Perera, 951 F.2d at 781. After finding that the embedded nature of Perera's claim was dispositive on the issue of jurisdiction, we noted that "the entry of a Rule 54(b) judgment does not change the interlocutory nature of the district court's order.... [T]he district court cannot expand this court's appellate jurisdiction by simply entering a Rule 54(b) judgment." Id. at 786. Similarly, a rule that gave weight to whether the district judge dismissed rather than stayed an action would allow a district court to determine the jurisdiction of an appellate court. If the district court stayed the action, the parties would arbitrate; if the district court dismissed the action, the party seeking to avoid arbitration could appeal immediately. See McCarthy, 122 F.3d at 1244. We agree with the Ninth Circuit that Congress could not have "intended this arbitrary result when it barred appellate review of interlocutory orders compelling arbitration." Id. Therefore we decline in this case to leave the jurisdictional trump card in the hand of the district court.[6]
 
 
 17
 In advocating that we exercise jurisdiction, Katherine asserts that doing so would promote judicial economy. As she views it, if we were to reach the merits, we might find that the arbitration clause is inapplicable because General Motors failed to timely notify Katherine of its intent to renew the lease. This would amount to a holding that the lease is no longer valid, and hence Katherine would be entitled to declaratory and injunctive relief as a matter of law.
 
 
 18
 Whether this scenario is plausible here is not for us to say at this juncture. However, in general, we perceive the issue of judicial economy differently in light of the national policy favoring arbitration. See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...."). The rule Katherine advances--that we extend jurisdiction over appeals from dismissals without prejudice "to allow for arbitration" in embedded proceedings--is likely to result in an inordinate number of appeals in which we simply affirm the district court's deference to an arbitration clause. On this point, the decisions in Armijo and Nationwide are instructive. In both cases the appellate courts, after laboriously exercising jurisdiction over dismissals in embedded proceedings, merely affirmed that the parties should litigate their claims before arbitrators.[7] See Armijo, 72 F.3d at 800; Nationwide, 953 F.2d at 49; see also Arnold, 920 F.2d at 1281 (affirming the referral to arbitration after finding jurisdiction over an appeal from a Rule 54(b) judgment in an embedded proceeding). In most cases, then, the most economical approach is not to allow an intermission for appellate review, but rather for the parties to proceed expeditiously to arbitration.
 
 
 19
 We are cognizant that our decision may result in Katherine, as she describes it, "spend[ing] significant time and resources pursuing arbitration, before ... the propriety of arbitration is ever resolved." Pl.'s Br. at 17. But this consequence is not inconsistent with the Federal Arbitration Act; indeed, Congress must have anticipated such expenditures when it determined that interlocutory decisions favoring arbitration were not immediately appealable. See 9 U.S.C. § 16(b). The Act "evidences a 'pro-arbitration tilt,' which 'requires that, with respect to embedded actions, the party opposing arbitration ... bear the initial consequence of an erroneous district court decision requiring arbitration.' " Gammaro, 15 F.3d at 96 (quoting Filanto, S.p.A. v. Chilewich Int'l Corp., 984 F.2d 58, 61 (2nd Cir.1993)). Moreover, our adherence to the demarcation between independent and embedded proceedings corresponds with the Act's purpose of promoting greater use of arbitration. See McCarthy, 122 F.3d at 1245.[8]
 
 
 20
 Finally, as we have explained in the past, "the fact that the court of appeals could end the litigation does not make a decision on a single issue final." Massey Ferguson Div. of Varity Corp. v. Gurley, 51 F.3d 102, 105 (7th Cir.1995). If it did, we would have jurisdiction "whenever a district judge addresses a single potentially-dispositive issue in the litigation." Id. Today's decision does not preclude review of the propriety of arbitration; instead, it merely "postpone[s] it until the arbitration proceeding has run its course." McCarthy, 122 F.3d at 1245; see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947, 115 S.Ct. 1920, 1925-26, 131 L.Ed.2d 985 (holding that appellate review of a district court decision confirming or vacating an arbitration award on the basis of whether the parties "agreed to submit their dispute to arbitration, should proceed like review of any other district court decision finding an agreement between parties, i.e., accepting findings of fact that are not 'clearly erroneous' but deciding questions of law de novo"). In sum, appellate review has never been in lockstep with each decision of the district court, no matter what the potential benefit to the parties. Accordingly, this appeal is dismissed for lack of appellate jurisdiction.
 
 
 21
 DIANE P. WOOD, Circuit Judge, dissenting.
 
 
 22
 Procedural rules should not be matters of Byzantine complexity, known and accessible only to initiates who are privy to knowledge that is kept secret from the rest of the world. But that is the kind of rule I fear the majority has created in its decision to make our appellate jurisdiction turn on the distinction between "independent" and "embedded" proceedings, even when a party is seeking to appeal under 28 U.S.C. § 1291 from a final judgment dismissing an action. Because I believe that there is a crucial difference between an order staying an arbitration proceeding, and an order directing the entry of a final judgment dismissing an action so that arbitration may proceed, I respectfully dissent from the majority's conclusion that we have no jurisdiction over Katherine Napleton's appeal.
 
 
 23
 As the majority recounts, this action began as a claim for declaratory and injunctive relief in the Circuit Court of Cook County, brought by Katherine Napleton to determine whether the lease of her property to General Motors had properly been renewed for the term beginning January 1, 1996. General Motors removed the case to federal court and then argued that an arbitration clause in the lease governed the dispute. It moved to dismiss or stay the action pending arbitration. The district court agreed that the arbitration clause applied and on July 29, 1996, issued an order "grant[ing] the motion to dismiss without prejudice to allow for arbitration." Katherine filed a motion for reconsideration, which the court denied on August 22, 1996. She then filed this appeal.
 
 
 24
 The first question, in my view, is whether the district court's order of July 29, 1996, amounted to a "final judgment," as that term is used in 28 U.S.C. § 1291: that is, is there a judgment that finally disposed of all claims of all the parties? Although there is ordinarily a difference between an order dismissing a complaint without prejudice, and a final judgment entered pursuant to Fed.R.Civ.P. 58, there are times when we must look beyond the surface to see which of those actions the district court has actually taken. We had occasion to consider this very problem, in a context implicating arbitration, in Farrand v. Lutheran Brotherhood, 993 F.2d 1253 (7th Cir.1993). There the district court entered an order dismissing an action without prejudice and specifically noted that nothing in its order was intended to prevent arbitration of the plaintiff's claims. Id. at 1254. On the subject of the order's finality, we had this to say:
 
 
 25
 An order dismissing a complaint "without prejudice" usually is not appealable, because the plaintiff may file an amended complaint. The judgment and accompanying opinion show, however, that no amendment is possible, which makes the order final and appealable.
 
 
 26
 Id. Thus, the mere fact that the dismissal was "without prejudice" does not alone deprive the judgment of its finality. See United States v. Wallace & Tiernan Co., 336 U.S. 793, 794-95 n. 1, 69 S.Ct. 824, 825-26 n. 1, 93 L.Ed. 1042 (1949); Trippe Mfg. Co. v. American Power Conversion Corp., 46 F.3d 624, 626 (7th Cir.1995) (distinction for appealability purposes is not whether dismissal was with or without prejudice, but rather whether dismissal was of complaint or entire action); Farrand, 993 F.2d at 1254; See generally 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3914.6, at 533 & n. 18 (2d ed.1992). Nor is the lack of a judgment formally entered pursuant to Fed R. Civ. P. 58 fatal to our ability to find a final judgment over which we may assume jurisdiction, provided that (1) the district court clearly intended its order to represent the final decision in the case, (2) the judgment of dismissal was entered in the clerk's docket, and (3) the prevailing party did not object to the taking of an appeal in the absence of a separate judgment. See generally Bankers Trust Co. v. Mallis, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (stating that the "sole purpose" of the separate entry of judgment requirement in Fed.R.Civ.P. 58 is to clarify when the time for appeal begins to run); Otis v. City of Chicago, 29 F.3d 1159 (7th Cir.1994) (en banc).
 
 
 27
 In the present case, neither the fact that the order was "without prejudice" nor the absence of a formal entry of judgment under Fed R. Civ. P. 58 deprives the order of its appealability. The district court's (docketed) order makes clear that no amendment of Napleton's complaint would change the outcome and that the dismissal was for the entire action, not just the complaint. (The finality of the district court's decision is further underscored by its order of August 22, 1996, denying Napleton's motion for reconsideration.) And although General Motors challenges our jurisdiction on appeal, the company's argument is not based on the lack of a separate entry of judgment under Fed.R.Civ.P. 58 per se, but rather on the intervention of the Federal Arbitration Act (FAA). The case might be different if, for example, General Motors complained that the missing entry of judgment somehow caused it prejudice. But that is not the case before us, and thus the lack of a formal entry of judgment under Fed.R.Civ.P. 58 is not determinative. Following Farrand, because the district court's order plainly dismissed the entire action without prejudice, we have here an order that is final and appealable--unless something in the FAA supersedes § 1291.
 
 
 28
 The relevant part of the FAA is found, as we all agree, at 9 U.S.C. § 16. I set forth its language again in full, for ease of reference:
 
 
 29
 (a) An appeal may be taken from--
 
 
 30
 (1) an order--
 
 
 31
 (A) refusing a stay of any action under section 3 of this title,
 
 
 32
 (B) denying a petition under section 4 of this title to order arbitration to proceed,
 
 
 33
 (C) denying an application under section 206 of this title to compel arbitration,
 
 
 34
 (D) confirming or denying confirmation of an award or partial award, or
 
 
 35
 (E) modifying, correcting, or vacating an award;
 
 
 36
 (2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or
 
 
 37
 (3) a final decision with respect to an arbitration that is subject to this title.
 
 
 38
 (b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order--
 
 
 39
 (1) granting a stay of any action under section 3 of this title;
 
 
 40
 (2) directing arbitration to proceed under section 4 of this title;
 
 
 41
 (3) compelling arbitration under section 206 of this title; or
 
 
 42
 (4) refusing to enjoin an arbitration that is subject to this title.
 
 
 43
 This language on its face identifies two broad classes of cases in which an appeal is possible, and one in which it is not. Subsection (a) allows appeals (1) from orders that somehow prevent arbitration from going forward, and (2) from final decisions with respect to an arbitration subject to the FAA, while subsection (b) prohibits an appeal from interlocutory orders that in one way or another allow the arbitration to proceed.
 
 
 44
 The issue that divides me from the majority is whether the fact that the request for arbitration was included (or "embedded") in a broader lawsuit, in which the parties were also litigating other issues, prevents an otherwise final judgment from being "a final decision with respect to an arbitration" as that term is used in § 16(a)(3). Under the majority's approach, when we are dealing with arbitration, only a subset of final judgments that satisfy § 1291 are cognizable in the courts of appeals: judgments that are "final" as § 1291 uses the term and that are issued in an "independent" proceeding rather than an "embedded" proceeding. Like my colleagues in the Tenth and Sixth Circuits, however, and like the dissenting judge in the Ninth Circuit decision on which the majority relies so heavily, I see nothing in § 16(a)(3) that justifies such a reading. See Armijo v. Prudential Ins. Co., 72 F.3d 793, 797 (10th Cir.1995) (relying on Farrand); Arnold v. Arnold Corp. Printed Communications for Business, 920 F.2d 1269, 1274-76 (6th Cir.1990); McCarthy v. Providential Corp., 122 F.3d 1242, 1246-49 (9th Cir.1997) (Pregerson, J., dissenting). See also Filanto, S.p.A. v. Chilewich Int'l Corp., 984 F.2d 58, 61 n. 3 (2d Cir.1993) (dictum stating that "[h]ad the complaint been dismissed [instead of stayed], it is arguable that an appeal would be immediately available"). Furthermore, the language of FAA § 16(b) clearly distinguishes between interlocutory orders, from which appeals are strictly limited, and final orders, for which the FAA does not modify the normal rule of appealability.
 
 
 45
 I therefore regard the language of the FAA itself as reason enough to reject the majority's view of our jurisdiction. The majority says that it is relying on Perera v. Siegel Trading Co., 951 F.2d 780 (7th Cir.1992). In my view, however, its approach is in serious tension with Perera, which held that the term "final decision" in § 16(a)(3) is "a legal term of art traditionally used to distinguish appealable and nonappealable lower court decisions under 28 U.S.C. § 1291--the general provision governing appellate jurisdiction." Id. at 783. Because the FAA contains no alternative definition of the term "final decision," this court ruled in Perera that "by using a term of art Congress intended to retain its preexisting meaning." Id. (I do not find the court's next comment, to the effect that judicial decisions have elaborated on the meaning of the term "finality," to be as "critical" as the majority does. See ante, note 4. The decisions under § 1291 distinguishing between something that resolves all claims of all parties, and other dispositions, are too legion to cite. The majority cannot escape the fact that it is construing the FAA as creating an implied exception to § 1291, in the face of language in the FAA that expressly disclaims such a result.)
 
 
 46
 Under the established preexisting meaning of § 1291, we would have to be able to conclude that a dismissal of an action without prejudice is somehow non-final or interlocutory before we would even reach the question whether the arbitration request initially arose in an "embedded" proceeding or an independent one. Judge Pregerson put the point well in his McCarthy dissent when he said:
 
 
 47
 While orders compelling arbitration in all independent arbitrability proceedings are necessarily final decisions, it does not logically follow that orders in all embedded arbitrability proceedings are necessarily interlocutory.
 
 
 48
 122 F.3d at 1247. If the district court (rightly or wrongly) throws out the entire case, the fact that the parties will go forward with their arbitration does not mean that there is something left pending on the district court's docket. There is not, and this makes the difference between an order staying proceedings (which is certainly not appealable, see 9 U.S.C. § 16(b)(1)) and an order dismissing the action, far more important than the majority allows. We should not ignore the "final decision" language of § 16(a)(3) in favor of what the majority concedes has sometimes been this court's "myopic" and "talismanic" adherence to the independent/embedded distinction. Cf. Majority Op. at 1211-12, 1212.
 
 
 49
 To do so disregards the Supreme Court's admonition in Budinich v. Becton Dickinson & Co., 486 U.S. 196, 202, 108 S.Ct. 1717, 1721-22, 100 L.Ed.2d 178 (1988), to preserve "operational consistency and predictability in the overall application of § 1291." It also ignores the history of FAA § 16, which was enacted after the Supreme Court overruled the Enelow-Ettelson doctrine, under which orders staying "legal" proceedings (i.e., the action in district court) on "equitable" grounds (e.g., the special defense setting up the arbitration agreement as taking precedence) had been treated as injunction orders appealable under 28 U.S.C. § 1292(a)(1). See Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 287, 108 S.Ct. 1133, 1142-43, 99 L.Ed.2d 296 (1988), overruling the line of cases based upon Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935), and Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942). After Gulfstream Aerospace overruled the Enelow-Ettelson avenue for appealing orders staying or refusing to stay arbitration proceedings, some confusion continued because it was still possible that the collateral order doctrine might sometimes permit an immediate appeal from such an order. Section 16 was enacted as part of the Judicial Improvements and Access to Justice Act of 1988, Pub.L. No. 100-702, in order to furnish a clear rule for appealability of orders relating to arbitration proceedings. Without any warrant in the statute, the majority's decision to qualify § 16 with the "imbedded" or "independent" distinction has muddied the waters considerably.
 
 
 50
 Furthermore, the majority's rule will yield strange results. For example, suppose that a Seller and a Buyer enter a contract for the sale of raw materials and that the contract includes an arbitration clause. After the Seller fails to deliver as promised, the Buyer covers on the open market and sues to recover damages. In its answer, the Seller: (1) moves to dismiss the Buyer's lawsuit on the basis of the arbitration clause; (2) permissively counterclaims for an outstanding, unrelated credit debt from several years earlier; and (3) argues in the alternative that either it did not breach the contract, or that any damages it owes should be offset by the Buyer's outstanding debt. Then suppose that the district court dismisses the Seller's counterclaim as time-barred, and also dismisses the Buyer's action for damages "without prejudice to allow for arbitration." Although on these facts the Seller would be entitled to appeal immediately on its counterclaim, as I understand the majority's opinion, the Buyer's claim would not be treated similarly--even though the district court has dismissed the entire action from its docket. To treat the two claims differently for purposes of appealability strikes me as incongruous. I find it equally unsatisfactory to impose upon the district courts the need to enter orders under Fed.R.Civ.P. 54(b) designating part of a final and comprehensive judgment that disposes of all claims of all of the parties as somehow a separate "judgment" for purposes of appeal, which is the solution the majority has been forced to adopt to respond to this concern. See ante at 1214, note 8. Such an approach deprives the Rule 58 final judgment of its principal virtues: clarity and definiteness, signaling the end of everything in the district court.
 
 
 51
 The majority frankly admits that it is concerned about the district court's ability, as it puts it, to determine whether or not the court of appeals will have jurisdiction over an appeal from an order requiring the parties to arbitrate. If the district court styles its order as a stay, it can then insulate itself from appellate review, while if the district court styles its order as a dismissal of the action without prejudice then appellate jurisdiction is secure. I do not disagree that the district courts have this power, nor was it any secret to the Congress that enacted FAA § 16. Congress specifically permitted different consequences for appellate jurisdiction in the statute. Whether or not we think the statutory lines make sense is somewhat beside the point. This is not a common law rule that we would be free to reshape as we wish. It is a statute, which we are obliged to respect.
 
 
 52
 The district courts enjoy similar powers in a variety of contexts, yet this does not justify our refusal to accept appeals. For example, the district court has discretion to decide whether or not to direct the entry of a partial final judgment under Fed.R.Civ.P. 54(b), or to begin the process of certification under 28 U.S.C. § 1292(b), but we do not condemn either of those two situations as an impermissible exercise of the district court's power to manipulate our own jurisdiction. Furthermore, from the standpoint of the parties, the difference between a stay and a dismissal of an action without prejudice is significant. A dismissal without prejudice requires the party who wants to invoke the aid of the court to return with a newly filed action. At the most mundane level, this step entails additional filing fees that must be paid to the court. More seriously, in having to re-file to pursue "embedded" claims, a party could conceivably encounter problems with statutes of limitations, obtaining service of process, or other procedural barriers to the new case. See, e.g., McCarthy, 122 F.3d at 1249 (Pregerson, J., dissenting). In short, even though the consequences of the district court's decision to dismiss rather than to stay may appear to be similar from the standpoint of the arbitration proceeding, they can differ in significant ways. Neither the parties nor the district courts are likely to choose casually between the two options, when important rights are at stake that at least one party will normally wish to protect.
 
 
 53
 Because I would find that we have jurisdiction over the appeal, I add a brief word about the merits. The lease between Katherine and General Motors indisputably contained a mandatory arbitration clause, which read as follows:
 
 
 54
 Section 8.01. In case any differences arise between the Lessor and the Lessee regarding the true meaning and intent of any of the terms and provisions of this lease or if any dispute should arise between them regarding the performance or nonperformance by either of them of any of the terms, covenants and conditions hereof, or if any claim is made by either of them that the other is in default by reason of the non-performance of any act provided for hereunder, then, and in any of such events, the matter in dispute, whether the same be the performance of an act, the forbearance of an act, or the payment of money, shall be submitted to arbitration....
 
 
 55
 Section 10.08 of the lease specified the way in which notices were to be transmitted, and section 1.02 set forth the procedure for lease renewals. Without belaboring the point, in light of the fact that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," Nielsen v. Piper, Jaffray & Hopwood, Inc., 66 F.3d 145, 148 (7th Cir.1995) (internal brackets and ellipsis omitted), I have no trouble concluding that the dispute between Katherine and GM fell within the scope of this broad arbitration clause. Katherine's arguments to the contrary border on the frivolous: she claims GM has already admitted "nonperformance" because it acknowledges that it sent the renewal notice to her husband (who lived at the same address), and thus the lack of proper notice to the record owner made the lease, along with the arbitration clause, lapse according to its own terms. These are arguments on the merits, which the arbitrator will be free to consider; they in no way negate the fact that there is a dispute between the parties about the way in which GM performed its act of renewing the lease pursuant to section 1.02, and its compliance with the notice requirements of section 10.08.
 
 
 56
 I would therefore find that we have appellate jurisdiction over this case and I would affirm the judgment of the district court.
 
 
 
 *
 A majority did not favor rehearing en banc. Chief Judge Posner and Circuit Judges Cummings, Easterbrook, Rovner, and Diane P. Wood voted to grant rehearing en banc. Circuit Judge Flaum took no part in the decision. A majority of the judges on the original panel did not favor a rehearing. Circuit Judge Diane P. Wood voted to grant a rehearing
 
 
 [1]
 During the initial twenty-year term, the rental rate was $3,177.99 per month for the first twelve years and $2,356.97 per month for the following eight years; during the ten-year renewal term, $1,095.86 per month; and during each five-year renewal term, $879.69 per month
 
 
 [2]
 During the events relevant here, Katherine has acted in her capacity as trustee for the Katherine R. Napleton Revocable Self-Declaration of Trust. For present purposes, however, this nuance is of no consequence. Thus we simply refer to "Katherine," not to "Katherine in her capacity as trustee."
 
 
 [3]
 Section 16 provides:
 (a) An appeal may be taken from--
 (1) an order--
 (A) refusing a stay of any action under section 3 of this title,
 (B) denying a petition under section 4 of this title to order arbitration to proceed,
 (C) denying an application under section 206 of this title to compel arbitration,
 (D) confirming or denying confirmation of an award or partial award, or
 (E) modifying, correcting, or vacating an award;
 (2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or
 (3) a final decision with respect to an arbitration that is subject to this title.
 (b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order--
 (1) granting a stay of any action under section 3 of this title;
 (2) directing arbitration to proceed under section 4 of this title;
 (3) compelling arbitration under section 206 of this title; or
 (4) refusing to enjoin an arbitration that is subject to this title.
 9 U.S.C. § 16.
 
 
 [4]
 The dissent argues that our approach is in serious tension with Perera, Dissent Op. at 1217, which stated that the term "final decision" is "a legal term of art traditionally used to distinguish appealable and nonappealable lower court decisions under 28 U.S.C. § 1291--the general provision governing appellate jurisdiction." Perera, 951 F.2d at 783. But the dissent overlooks that opinion's critical next sentence: "Judicial decisions have given meaning to this term of art." Id. And as we explain, our precedent has consistently held that the term "final decision" does not encompass orders that require arbitration in embedded proceedings
 
 
 [5]
 Farrand v. Lutheran Brotherhood, 993 F.2d 1253 (7th Cir.1993), does suggest that we should exercise jurisdiction over a dismissal without prejudice in favor of arbitration. But Farrand contains no discussion of the independent/embedded distinction that has dominated this Circuit's other opinions, nor does its treatment of the jurisdictional question suggest that the issue was argued extensively, as it was here. In sum, we do not believe that Farrand was intended to stultify the reasoning of Perera; nor, apparently, do the parties, as neither has invoked Farrand here
 
 
 [6]
 The dissent states, "Neither the parties nor the district courts are likely to choose casually between the two options [of a stay or dismissal without prejudice]." Dissent Op. at 1218. But here General Motors styled its motion "a motion to dismiss or stay pending arbitration." As far as anyone knows, the district court chose dismissal to rid its calendar (temporarily) of the case. Moreover, in circumstances where "important rights are at stake that at least one party ... wish[es] to protect," id., the parties remain free to advocate either a stay or a dismissal without prejudice. All we hold today is that for the purposes of determining whether we have jurisdiction over an appeal, a dismissal without prejudice and a stay will be treated the same
 
 
 [7]
 The dissent illustrates the same judicial diseconomy here
 
 
 [8]
 The dissent argues that the rule created by our opinion--that a party cannot appeal from a judgment favoring arbitration in an embedded proceeding--"will yield strange results." Dissent Op. at 1217. To prove its point, the dissent poses a hypothetical involving two claims. The district court dismisses the counterclaim as time-barred and the primary claim "without prejudice to allow for arbitration." The dissent posits that the defendant would be "entitled to appeal immediately on its counterclaim." Id. But under our ruling today, the "dismissal without prejudice to allow for arbitration" would be a non-final judgment. Therefore the defendant's ability to pursue an immediate appeal would apparently depend on whether the district court entered a judgment pursuant to Rule 54(b)