**IOWA GRAIN CO., Plaintiff–Appellant,**

v.

**Arthur F. BROWN, Jr., Laura W. Brown and William B. McGillivray, Defendants–Appellees.**

No. 98–1863.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 26, 1998.

Decided March 23, 1999.

Patrick G. King (argued), Henderson & Lyman, Chicago, IL, for Plaintiff–Appellant.

Linda C. Frazier (argued), Chicago, IL, for Defendants–Appellees.

Before EASTERBROOK, DIANE P. WOOD, and EVANS, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

This case presents several twists on an increasingly common problem: When should a court enforce an arbitration agreement that arguably covers a dispute between two parties? Iowa Grain Company brought this action seeking a declaratory judgment that would relieve it of a contractual obligation to arbitrate certain claims arising out of its management of certain commodity accounts for defendants Arthur F. Brown, Jr., his wife Laura W. Brown, and William B. McGillivray ("the Customers"). It was Iowa Grain's position that the Customers had waived their right to arbitrate, otherwise apparently secure in the written agreements they had with Iowa Grain, because they had filed a class action lawsuit in the U.S. District Court

for the District of South Carolina. That case, however, had been dismissed promptly by the court on Iowa Grain's motion to enforce the forum-selection provisions of the Customer Agreements they had signed. The district court in the present action concluded that the Customers had not waived their right to arbitrate by filing their class action and that the arbitration agreements remained enforceable. It dismissed the action and we affirm.

## I

The underlying facts of the dispute hardly matter at this stage, and so we will confine our discussion to the briefest outline. The Customers became involved with Iowa Grain when Donald Eubanks, a registered commodity broker, solicited them and others to open individual discretionary commodity accounts with his company, Program Traders. Program Traders was an unincorporated introducing broker, guaranteed by Iowa Grain, which was and is a futures commission merchant. See 17 C.F.R. §§ 1.3, 1.10 *et seq.* Customer Arthur Brown signed an individual Iowa Grain Customer Agreement, Arbitration Agreement, and Trading Authorization form on March 10, 1995, that designated Eubanks as his agent for certain commodities transactions. Laura Brown did not sign that agreement or any other. William McGillivray opened the same kind of account as Arthur Brown did, and he entered into the same three agreements. In the end, unfortunately, Eubanks' trading strategy resulted in substantial losses for both the Browns and McGillivray, all of whom were unsophisticated investors.

On June 27, 1997, the Customers filed the South Carolina federal lawsuit, which they attempted to bring as an action "on behalf of a class of all persons who have or had an account with Don Eubanks, as guaranteed introducing broker, and Iowa Grain." Their complaint (which invoked only diversity jurisdiction and named only Iowa Grain as a defendant) alleged a number of common law violations as well as violations of federal and state securities laws and the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961. Iowa Grain promptly moved to dismiss the case on the basis of the forum-selection clause in the basic Customer Agreement, which read:

(¶ 24) Forum Selection and Consent to Jurisdiction.

The undersigned ("Customer") agrees to bring any judicial action, including any complaint, counterclaim, cross-claim or third party complaint, arising directly, indirectly, or otherwise in connection with, out of, related to or from this Agreement or any transaction covered hereby or otherwise arising in connection with the relationship between the parties including any action by Customer against Iowa Grain or any person who is an officer, agent, employee or associated person of Iowa Grain at the time the cause of action arises, only in courts located within Cook County, Illinois. The undersigned ("Customer") also consents and submits to the jurisdiction of any state or federal court located within Cook County, Illinois. Customer waives any right Iowa Grain may have to transfer or change the venue of any litigation brought against Customer by Iowa Grain.

If Customer has not signed an Arbitration Agreement with Iowa Grain, Customer agrees that any action or proceeding between Iowa Grain (and its agents, employees, officers and directors) and Customer arising out of this Agreement or any transaction covered hereby shall be litigated only in courts whose situs is within Chicago, Illinois.

The South Carolina district court rejected the Customers' efforts to show that the forum-selection agreement was unenforceable (for reasons like inequality of bargaining power, inconvenience, and the like) and, on September 12, 1997, it dismissed the action. Later, on October 17, 1997, the court issued a brief order on the Customers' motion for reconsideration and clarifi-

cation, in which it reaffirmed its decision to dismiss the case and added this statement:

> Although the court finds its ruling to be clear, to avoid any potential confusion, it reiterates that the dismissal of this action was based upon the forum-selection clause in the Customer Agreements and not on the merits of the case. The dismissal was without prejudice, allowing Plaintiffs to proceed with their claims in one of the forums permitted by the Customer Agreement should they so choose.

At the same time as they pursued their motion for reconsideration and clarification, the Customers turned to the Arbitration Agreements Arthur Brown and McGillivray had signed. Those agreements contained the following two paragraphs:

> Iowa Grain and the undersigned Customer agree that any controversies arising out of or relating to any of the Customer's accounts with Iowa Grain, relating to transactions with Iowa Grain and/or its employees, affiliates, and/or agents or arising out of the Customer Agreement executed by the Customer, including any counterclaims to any action brought against Customer by or on behalf of Iowa Grain, shall be settled by arbitration in accordance with the rules, then in effect, of any contract market where the transaction(s) giving rise to the controversy were or could have been executed, the American Arbitration Association or the National Futures Association. The laws of the State of Illinois shall govern any arbitration.

> At such time as the Customer may notify Iowa Grain of its intention to submit a claim to arbitration, or at such time as Iowa Grain may notify the Customer of its intention to submit a claim to arbitration, the Customer will have the opportunity to elect a forum for conducting the proceedings.

On September 23, 1997 (the same day the motion for reconsideration and clarification was also filed), the Customers filed a demand for arbitration of their claims against Iowa Grain before the American Arbitration Association (AAA) in South Carolina. These demands were brought individually by the Browns, on the one hand, and McGillivray, on the other; the Customers made no effort to serve as class representatives.

Rather than cooperating with the arbitration, Iowa Grain responded by filing this lawsuit in the district court for the Northern District of Illinois on October 14, 1997. Invoking the Declaratory Judgment Act, 28 U.S.C. § 2201, it sought a ruling that the Customers had acted inconsistently with their contractual arbitration rights when they filed the South Carolina action, and thus that they had waived their right to arbitrate. The district court rejected this position, reasoning that since class actions cannot be arbitrated absent an explicit agreement, the Customers did not act inconsistently with their contractual obligation to arbitrate by filing a putative class action and thus there was no waiver. The court dismissed Iowa Grain's complaint with a minute order that directed the parties to pursue their dispute in arbitration proceedings under the agreement.

## II

### A. *Jurisdiction*

Before we address the merits of Iowa Grain's appeal, we must examine our own appellate jurisdiction. On one level, jurisdiction appears obvious: the district court entered an order that disposed of every matter before it and the dismissal was embodied in a Rule 58 final judgment, which is normally enough to invoke appellate jurisdiction under 28 U.S.C. § 1291. In addition, the Federal Arbitration Act confers appellate jurisdiction over "a final decision with respect to an arbitration that is subject to [the Act]." 9 U.S.C. § 16(a)(3).

 The only thing that complicates this otherwise straightforward analysis is the additional judge-made requirement in

arbitration cases that an appeal will lie from a judgment that is final for § 1291 purposes only if the proceeding before the district court was an "independent" one, not one in which the arbitration issue was "embedded" with other claims. See *Napleton v. General Motors Corp.*, 138 F.3d 1209, 1212 (7th Cir.1999); *Perera v. Siegel Trading Co.*, 951 F.2d 780, 784–85 (7th Cir.1992). An "independent" proceeding, as the *Napleton* decision explained, is one in which the request to compel arbitration is the sole issue before the district court. 138 F.3d at 1211. If the suit before the district court both asks for substantive relief on a claim and seeks action forcing the parties to arbitrate, *Napleton* holds that the arbitration ruling must be characterized as "embedded" in the overall action. *Id.* at 1212. This is so even if the district court dismisses the entire action and finally terminates all proceedings so that arbitration can proceed. *Id.* From a policy standpoint, that course of events strongly resembles an order requiring the parties to arbitrate, which would not be appealable as a separate matter if the district court merely stayed the remainder of the action instead of dismissing it. See 9 U.S.C. § 16(b). The *Napleton* panel therefore concluded that the policy of avoiding appeals that might disrupt an arbitration proceeding should be followed in this situation as well. 138 F.3d at 1213.

We must therefore decide if Iowa Grain's suit for a declaratory judgment with respect to the Customers' arbitration rights satisfies the pristine simplicity called for in *Napleton* as a condition of appellate jurisdiction under 9 U.S.C. § 16(a)(3). Even though it was not a suit to compel arbitration, we conclude that it was still an independent proceeding. The only issues that Iowa Grain raised in its complaint related to the Customers' right to proceed with their arbitration. Some paragraphs in the request for relief addressed that point affirmatively, by seeking a declaration that the Customers had waived that right, and other paragraphs addressed it negatively, by seeking decla-

rations that any suit would have to proceed before a different forum (the courts located in Cook County, Illinois), but the complaint scrupulously avoids any mention of the merits of the controversy. Declaratory judgment complaints often have the effect of reversing the "natural" order of the parties. *E.g.*, *Pabst Brewing Co. v. Corrao*, 161 F.3d 434, 437 (7th Cir.1998). Here, the Customers might have gone to court to compel Iowa Grain to respect the arbitration clause, but Iowa Grain beat them to the punch. That is of no jurisdictional consequence, in our view. We have appellate jurisdiction over the district court's decision dismissing Iowa Grain's action in this independent proceeding.

## B. Standard of Review

The next preliminary point we must consider relates to the proper standard of review in this kind of case. Panels in this circuit in the past have mentioned several different standards for cases raising the question whether a right to arbitrate has been waived. For example, in *St. Mary's Medical Center v. Disco Aluminum Products Co.*, 969 F.2d 585, 588–89 (7th Cir.1992), the court stated that clear error review should apply to this issue, insofar as the waiver question depended on ascertaining what actions the party had taken and what legal consequence those actions had. We reiterated this position in *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir.1995). On the other hand, in *International Union of Operating Engineers, Local No. 841 v. Murphy Co.*, 82 F.3d 185, 187 (7th Cir.1996), the court said that we review a district court's denial of a motion to compel arbitration because of waiver *de novo*.

In our view, the apparent inconsistency between these two lines of authority disappears if we look more carefully at what is under review. As the Second Circuit put it in *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20 (2d Cir.

1995), "[t]he question of whether a party's pretrial conduct amounts to waiver of arbitration is purely a legal one, and our review of this issue is *de novo*. The factual determinations upon which a district court predicates its finding of waiver, nonetheless, are ordinarily not reversed unless they are clearly erroneous." *Id.* at 25 (citations omitted); see also *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 576–77 (5th Cir.1991) (taking a similar two-tiered approach). This statement properly reflects the fact that there is both a factual and a legal dimension to the waiver inquiry. On the whole, the facts are what matter, because the district courts must make an inquiry into the totality of the circumstances that led to the alleged waiver. Nevertheless, the court will undertake this inquiry with the background legal rules in mind—both private rules derived from the agreement to arbitrate, and any applicable statutes or common law rules that apply. Legal presumptions also play a role in evaluating the consequences of the parties' actions. In *Cabinetree*, for example, we held that a presumption of waiver may arise from certain conduct, while at the same time we suggested what kind of evidence might rebut that presumption. 50 F.3d at 390. Here, we will therefore review deferentially the district court's findings about the steps the Customers took. Because no one has claimed that the district court misinterpreted the contract or otherwise misunderstood the applicable law, the result turns on whether the district court clearly erred in its assessment of the situation.

### C. Merits

Iowa Grain believes that its case falls squarely within the rule announced in *Cabinetree* that "an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate." 50 F.3d at 390. Furthermore, it points out, *Cabinetree* held that the party asserting waiver need not show that it would be prejudiced by an order compelling arbitra-

tion. *Id.* No one can doubt that the Customers went to a judicial forum initially instead of invoking the arbitration agreement, and Iowa Grain asserts that should be the end of our inquiry.

The district court thought it was not. It acknowledged the presumption of waiver announced in *Cabinetree*, citing the case, but it also took into account the recognition in *Cabinetree* that this is just a presumption, not an invariable rule. The *Cabinetree* opinion explained what kinds of exceptions it had in mind as follows:

> For it is easy to imagine situations— they have arisen in previous cases—in which such invocation does not signify an intention to proceed in a court to the exclusion of arbitration. There might be doubts about arbitrability, and fear that should the doubts be resolved adversely the statute of limitations might have run. Some issues might be arbitrable, and others not. The shape of the case might so alter as a result of unexpected developments during discovery or otherwise that it might become obvious that the party should be relieved from its waiver and arbitration allowed to proceed. We need not try to be exhaustive. It is enough to hold that while normally the decision to proceed in a judicial forum is a waiver of arbitration, a variety of circumstances may make the case abnormal, and then the district court should find no waiver or should permit a previous waiver to be rescinded.

50 F.3d at 390–91 (citations omitted). This passage establishes a number of important propositions. First, an important part of the district court's waiver inquiry is to determine as a matter of fact whether the party filing the lawsuit intended to elect a judicial forum rather than the arbitral tribunal. Second, uncertainty about the right to arbitrate is a factor that tends to undermine a finding of waiver from the mere filing of a court action. Third, even if a district court finds an initial waiver of the right to arbitrate, it is also entitled to

permit that waiver to be rescinded, depending on the course the litigation takes.

The district court here found that the Customers had hoped to pursue their South Carolina court case as a class action. Because arbitration is based fundamentally on an agreement between the parties, see, e.g., *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), the kind of class action contemplated by Fed.R.Civ.P. 23(b) is normally unavailable in arbitration. *Champ v. Siegel Trading Co.*, 55 F.3d 269, 276 (7th Cir. 1995). The district court observed that the arbitration agreement the Customers signed does not contain a consolidation clause or a provision for class treatment. It therefore interpreted the Customers' intent in filing the South Carolina action as an effort to structure the case—change its shape, as *Cabinetree* put it—in a way that was fundamentally incompatible with arbitration. It declined to infer waiver from this course of conduct. Finally, finding that the Customers had diligently pursued their arbitration rights by filing their demand promptly after the South Carolina court dismissed the class suit and filing a timely motion to compel arbitration in the declaratory judgment action, the court ordered the arbitration to proceed.

Iowa Grain offers two responses to the district court's reasoning. First, it has tried to persuade us that class-based arbitration actually is available before the AAA, and that the Customers should have demanded arbitration and tried to obtain Iowa Grain's consent for such an expanded proceeding. We express no opinion on the theoretical ability of the AAA to handle a multiple-party proceeding in a case properly brought in that form—indeed, we assume that it would have no problem doing so. But it is plain that the underlying agreement to arbitrate did not obligate either party to participate in such a pro-

ceeding. The district court refused to infer waiver from the Customers' failure to ask for something to which they had no contractual right. We agree that it would be wrong to find waiver in that situation. We note too that the record before us indicates that Iowa Grain was actively opposing a multiple-party arbitration in correspondence it had with the AAA, which makes its position on this point somewhat hollow. In any event, the arbitration that is presently before the AAA is not a multiple-party proceeding. It was filed solely on behalf of the Browns and McGillivray, and as such the district court was correct to observe that it differed materially from the South Carolina action.

This is not to say, however, that every procedural difference between a suit in court and an arbitration is enough to support a finding that a party did not waive arbitration by trying a lawsuit first. Such a sweeping approach would utterly overwhelm the presumptive waiver rule we announced in *Cabinetree*. We do not understand the district court to have adopted this view. Instead, it correctly looked at the totality of the circumstances before it decided that no waiver had occurred. See *St. Mary's Med. Ctr.*, 969 F.2d at 588; *Morrie Mages & Shirlee Mages Found. v. Thrifty Corp.*, 916 F.2d 402, 405 (7th Cir. 1990). A number of other factors also influenced the court's decision. For example, the party seeking an eleventh-hour arbitration in *Cabinetree* had removed the case to federal court, had actively pursued discovery, and had compelled the opposing side to produce nearly 2,000 documents. In contrast, the Customers promptly filed their arbitration demand eleven calendar days after the district court's order dismissing their class action.

In addition, it was Iowa Grain that urged the South Carolina court to respect the remedies specified in the contract. Those remedies, as Iowa Grain certainly knew, included not only the right to proceed in the courts located in Cook County, but also the obligation to arbitrate "any

controversies arising out of or relating to any of the Customer's accounts with Iowa Grain, relating to transactions with Iowa Grain and/or its employees, affiliates, and/or agents or arising out of the Customer Agreement executed by the Customer. . . ." Any doubts it may have had about the scope and intent of the court's order dismissing the Customers' class action should have been put to rest in the order of clarification the court issued, in which it "allow[ed] Plaintiffs to proceed with their claims in *one of the forums* permitted by the Customer Agreement should they so choose." (Emphasis added.) The Agreements themselves clearly indicate that one of those forums was an arbitral tribunal.

Taking all these circumstances into account, we conclude that Iowa Grain has not shown that the district court clearly erred when it found that the Customers had not waived their right to arbitrate. This leaves only one loose end for us to discuss: what to do with Laura Brown's case. As we mentioned earlier, Laura Brown never personally signed either the Customer Agreement or the Arbitration Agreement. Iowa Grain asserts that this means it could not possibly have any obligation to arbitrate her claims, even if it must arbitrate Arthur Brown's claims and McGillivray's claims.

In our view, this is a matter that should be addressed by the arbitrator. It is not clear that Laura Brown has claims that are legally separable from those of Arthur Brown, and thus we cannot tell at this juncture whether her presence in the proceeding adds anything or not. It is also not clear whether Arthur Brown may have been acting as her agent when he signed the agreements. In short, the answer to this question depends on facts that are better developed before the arbitrator. There is no doubt that the legality of Iowa Grain's actions with respect to the account the Browns held jointly is properly before the arbitrator, which means that this is not a case in which we are asking the arbitra-

tor to decide whether or not there is an initial agreement to arbitrate. See *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The arbitrator will also be free to decide whether the Browns have properly made Laura a party to begin with, and what to do with her independent claims (if any) if they have not.

We therefore AFFIRM the judgment of the district court dismissing Iowa Grain's declaratory judgment action and ordering the parties to pursue their claims in arbitration.