Larketta RANDOLPH, on behalf of herself and all others similarly situated, Plaintiff-Appellant,

v.

GREEN TREE FINANCIAL CORP.—ALABAMA;  and Green Tree Financial Corporation, Defendants-Appellees.

No. 98-6055.

United States Court of Appeals,

Eleventh Circuit.

June 22, 1999.

Appeal from the United States District Court for the Middle District of Alabama. (No. CV-96-D-11-N), Ira De Ment, Judge.

Before HATCHETT and CARNES, Circuit Judges, and FARRIS[*], Senior Circuit Judge.[**]

CARNES, Circuit Judge:

Plaintiff Larketta Randolph appeals the district court's order compelling arbitration of her claim against defendants Green Tree Financial Corporation and Green Tree Financial Corp.—Alabama (collectively, "Green Tree"), which financed her purchase of a mobile home.  She alleges that Green Tree's financing documents violate the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), that its mandatory arbitration requirement violates the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f ("Equal Credit Act"), and that the TILA precludes the arbitration of disputes arising under that legislation.  The district court ordered the parties to proceed to arbitration and dismissed the action with prejudice.  Green Tree challenges our jurisdiction to hear this appeal.  We conclude that the district court's judgment was an appealable "final decision."  We also hold that the arbitration agreement in this case defeats the remedial purposes of the TILA and is unenforceable.

## I. BACKGROUND

[*]Honorable Jerome Farris, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

[**]This decision is rendered by a quorum, due to the retirement of then-Chief Judge Hatchett on May 14, 1999.  28 U.S.C. § 46(d).

1

This case stems from Randolph's January 25, 1994, purchase of a mobile home from Better Cents Home Builders, Inc., in Opelika, Alabama. Randolph financed her purchase through Green Tree Financial Corp.—Alabama, a wholly-owned subsidiary of Green Tree Financial Corporation. Randolph contends that Green Tree required her to obtain "vendor's single interest" insurance, which protects a vendor or lienholder against the costs of repossession in the event of default, but did not mention this requirement in its Truth in Lending Act disclosure.

Randolph's retail installment contract with Better Cents, which names Green Tree Financial Corp. as the assignee, contains an arbitration provision. It reads, in pertinent part:

17. ARBITRATION: All disputes, claims, or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of Buyer(s). This arbitration Contract is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY ASSIGNEE (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort, and property disputes will be subject to binding arbitration in accord with this Contract. The parties agree and understand that the arbitrator shall have all powers provided by the law and the Contract ... [including] money damages, declaratory relief, and injunctive relief. Notwithstanding anything hereunto the contrary, Assignee retains an option to use judicial or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home.... The initiation and maintenance of an action for judicial relief in a court [on the foregoing terms] shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Contract, including the filing of a counterclaim in a suit brought by Assignee pursuant to this provision.

Randolph brought this suit in district court in January, 1996, alleging that Green Tree[1] violated the TILA by failing to include the requirement of vendor's single interest insurance in its TILA disclosure, and

---

[1]Her suit also named as a defendant Green Tree Financial Servicing Corporation. The district court dismissed this party from the action.

violated the Equal Credit Act by requiring arbitration of all claims.[2]  She sought certification of a class of individuals who had entered into similar agreements with Green Tree. In response, Green Tree moved to compel Randolph to arbitrate her complaint pursuant to the arbitration agreement.  It also moved to stay the action pending arbitration or, in the alternative, to dismiss it.

The district court granted the motion to compel arbitration, and declined to certify a class.  *See Randolph v. Green Tree Fin. Corp.,* 991 F.Supp. 1410, 1424-25 (M.D.Ala.1997).  Because it concluded that all the issues raised in Randolph's complaint must be submitted to arbitration, it denied the motion to stay the action and instead dismissed her claims with prejudice.  *See id.*  Randolph filed this appeal.  Green Tree subsequently moved to dismiss the appeal for lack of jurisdiction.

## II. STANDARD OF REVIEW

The jurisdictional issue is a question of law, which we review *de novo.  See, e.g., Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir.1998).  We review *de novo* the district court's order compelling arbitration.  *See, e.g., Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 756 (11th Cir.1993).

## III. ANALYSIS

### A. WHETHER THE DISTRICT COURT'S ORDER WAS APPEALABLE AS A "FINAL DECISION" UNDER THE FEDERAL ARBITRATION ACT

As a threshold matter, we decide whether we have jurisdiction over this appeal.  Though we would normally look to 28 U.S.C. § 1291 to determine our jurisdiction over the dismissal of this action, "Congress has set forth special rules governing appeals from a district court's arbitration order."  *McCarthy v. Providential Corp.,* 122 F.3d 1242, 1243 (9th Cir.1997).  Those rules are set forth in section 16 of the Federal Arbitration Act, 9 U.S.C. § 16.  That provision states:

---

[2]In her initial complaint, Randolph also alleged fraud in the inducement of the arbitration agreement, but she omitted that claim in her amended complaint.  It was deemed waived by the district court, and Randolph does not raise it on appeal.

(a)    An appeal may be taken from—

(1)    an order—

(A)    refusing a stay of any action under section 3 of this title,

(B)    denying a petition under section 4 of this title to order arbitration to proceed,

(C)    denying an application under section 206 of this title to compel arbitration,

(D)    confirming or denying confirmation of an award or partial award, or

(E)    modifying, correcting, or vacating an award;

(2)    an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title;  or

(3)    a final decision with respect to an arbitration that is subject to this title.

(b)    Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—

(1)    granting a stay of any action under section 3 of this title;

(2)    directing arbitration to proceed under section 4 of this title;

(3)    compelling arbitration under section 206 of this title;  or

(4)    refusing to enjoin an arbitration that is subject to this title.

9 U.S.C. § 16.  Put succinctly, the provision "identifies two broad classes of cases in which an appeal is possible, and one in which it is not." *Napleton v. General Motors Corp.,* 138 F.3d 1209, 1216 (7th Cir.1998) (Wood, J., dissenting).  Subsection § 16(a)(1)-(2) allows appeals "from orders that somehow prevent arbitration from going forward";  conversely, § 16(b) bars appeals "from interlocutory orders that in one way or another allow the arbitration to proceed." *Id.*

The other circumstance under which appeals are allowed is set out in § 16(a)(3)—"a final decision with respect to an arbitration that is subject to this title."  The question here is whether the district court's order compelling arbitration of the issues raised in Randolph's complaint and dismissing her claims with

4

prejudice falls within that category. If it does, we have jurisdiction. If it does not, the parties must proceed to arbitration.

In arguing that we lack jurisdiction, Green Tree distinguishes between "embedded" and "independent" proceedings, a distinction which has been drawn by a number of circuits that have considered § 16(a)(3). An "embedded" proceeding is one in which the arbitration issue arises as part of a broader action dealing with other issues. In this case, for example, Randolph's action alleges a substantive violation of the TILA as well as raising the arbitrability question; indeed, the motion to compel arbitration was filed by the defendant, Green Tree. In an "independent" proceeding, the motion to compel arbitration is the *only* issue before the court.

Several circuits have held that orders compelling arbitration which arise in embedded proceedings must be treated as interlocutory and non-appealable, not as "final decisions" under § 16(a)(3). *See, e.g., John Hancock Mut. Life Ins. Co. v. Olick,* 151 F.3d 132, 135-36 (3d Cir.1998); *Seacoast Motors of Salisbury, Inc. v. Chrysler Corp.,* 143 F.3d 626, 628 (1st Cir.1998) ("The general rule governing what constitutes a final decision under section 16 is that an order compelling arbitration is not final, and therefore not immediately reviewable, if the arbitrability issue is 'embedded'...."); *Napleton,* 138 F.3d at 1212 (7th Cir.) ("[T]he jurisdictional lodestar of appealability is whether the decision favoring arbitration is from an independent or from an embedded proceeding."); *McCarthy,* 122 F.3d at 1244 (9th Cir.) (" '[I]f the motion to compel arbitration is "embedded" in a substantive suit pending before that court, the district court's decision to compel arbitration of some or all of the claims before it is not considered to be final, and therefore not reviewable.' " (quoting *Prudential Ins. Co. of Am. v. Lai,* 42 F.3d 1299, 1302 (9th Cir.1994))); *In re Pisgah Contractors, Inc.,* 117 F.3d 133, 136 (4th Cir.1997); *Altman Nursing, Inc. v. Clay Capital Corp.,* 84 F.3d 769, 771 (5th Cir.1996) ("An order involving an embedded proceeding is always an interlocutory order; an order involving an independent claim is always final."); *Gammaro v. Thorp Consumer Discount Co.,* 15 F.3d 93, 95 (8th Cir.1994); *Filanto, S.p.A. v. Chilewich International Corp.,* 984 F.2d 58, 60-61 (2d Cir.1993).

5

In most embedded proceedings treating orders compelling arbitration as interlocutory makes sense, because after the arbitrability issue has been decided, other issues remain in the case for the district court to resolve; so an order directing the parties to proceed to arbitration could not possibly be considered a "final decision" under § 16(a)(3). In cases like this one, however, where the district court's dismissal of the action leaves no additional issues for it to resolve, treating the distinction between embedded and independent proceedings as decisive makes less sense. Nevertheless, a number of circuits have adhered, with a concededly "myopic[ ]" focus, to the embedded/independent distinction when determining whether they had jurisdiction to hear an appeal under § 16(a)(3). *See Napleton,* 138 F.3d at 1213 ("[T]his Circuit has focused, almost myopically, on whether a proceeding is independent or embedded.").

The circuits taking this approach have insisted that a district court's order compelling arbitration in an embedded proceeding is interlocutory and non-appealable, even if the district court *dismisses* the remaining claims. *See, e.g., Seacoast,* 143 F.3d at 628-29 (dismissal of embedded proceeding without prejudice is non-appealable); *Napleton,* 138 F.3d at 1212 (same); *McCarthy,* 122 F.3d at 1244-45 (arbitration order in embedded proceeding not appealable where district court dismissed action and ordered court clerk to close file); *Altman Nursing,* 84 F.3d at 771 (arbitration order in embedded proceeding nonappealable, even though district court's order ended all litigation); *Gammaro,* 15 F.3d at 95-96 (arbitration order non-appealable where court dismissed remaining issues).

By contrast, both the Sixth and Tenth Circuits have taken a less mechanical approach to the question of whether an arbitration order is an appealable "final decision" under § 16(a)(3). In *Armijo v. Prudential Insurance Co. of America,* 72 F.3d 793, 797 (10th Cir.1995), the Tenth Circuit treated the district court's dismissal of the plaintiffs' remaining claims, apparently with prejudice, as an appealable final decision. Similarly, in *Arnold v. Arnold Corp.—Printed Communications for Business,* 920 F.2d 1269, 1276 (6th Cir.1990), the Sixth Circuit recognized its appellate jurisdiction over an order compelling arbitration in an embedded proceeding, relying on the fact that the district court had entered final judgment and had "nothing

left ... to do but execute the judgment." *See also Napleton,* 138 F.3d at 1214-15 (Wood, J., dissenting); *McCarthy,* 122 F.3d at 1246-47 (Pregerson, J., dissenting); *Filanto, S.p.A.,* 984 F.2d at 61 n. 3 (dicta noting that at least a limited appeal might have been available "[h]ad the complaint been dismissed").

We are thus faced with a circuit split on the question whether a district court's order compelling arbitration in an embedded proceeding is an appealable "final decision" where it dismisses the remaining claims. This question is one of first impression in our circuit. In answering it, we begin by recognizing that "final decision" is a term of art which was of long standing when Congress enacted § 16(a)(3), and we will therefore take guidance from prior judicial interpretations of the term. *See, e.g., Napleton,* 138 F.3d at 1211 (citation omitted). In interpreting this term, however, we proceed from a different position than circuits such as the Seventh Circuit, because we have never accorded the same degree of "talismanic significance," *id.,* that others have to the distinction between independent and embedded proceedings.

Instead, our interpretation of the term "final decision" has generally followed "the simplest traditional definition of finality: the decision has disposed of all the issues framed by the litigation, leaving nothing to be done but execute the order." 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3914.17, at 18-19 (2d ed.1992). *See also Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945) (decision of the district court is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."). We have taken that approach both with respect to the general provision dealing with the appealability of final decisions of the district courts, 28 U.S.C. § 1291,[3] *see, e.g., Shannon v. Jack Eckerd Corp.,* 55 F.3d 561, 563 (11th Cir.1995), and with respect to the FAA itself, *see Thomson McKinnon Securities, Inc. v. Salter,* 873 F.2d 1397, 1399 (11th Cir.1989).[4] *See also Morewitz v. West of England Ship Owners Mut. Protection & Indem. Ass'n*

---

[3]28 U.S.C. § 1291 states that "[t]he courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States...."

[4]In *Thomson McKinnon,* we held that under what is now 9 U.S.C. § 16(a)(3), "decisions of the district court are final if they 'end[ ] the litigation on the merits and leave[ ] nothing for the [district] court to do but execute the judgment.' " *Thomson McKinnon,* 873 F.2d at 1399 (quoting *Catlin,* 324 U.S. at 233, 65

7

*(Luxembourg),* 62 F.3d 1356, 1361 (11th Cir.1995) (FAA case holding that decisions of the district court are final if they leave the district court with nothing to do but execute judgment, but relying on 28 U.S.C. § 1291, not 9 U.S.C. § 16(a)(3)).

In most arbitration appeals there will be little difference between the traditional definition of "final decision" and one that relies on the distinction between embedded and independent proceedings. If the district court's order compelling arbitration in a so-called embedded proceeding leaves other issues unresolved, the court will have more left to do than simply execute the judgment, so there will be no final decision. But that is not true in cases such as this one, where the district court dispensed with the remaining issues by dismissing the case. Only if we followed the other circuits (save the Sixth and Tenth) and attached excessive significance to the "embedded" versus "independent" proceeding distinction, instead of applying the venerable definition of "final decision," would we lack jurisdiction here.

That we decline to do. Nothing in the plain language of the statute requires us to make the embedded/independent distinction decisive. Moreover, the history of § 16(a)(3)'s enactment favors our standard reading of "final decision," and counsels against attaching undue significance to the embedded/independent distinction. Section 16 was enacted against the background of the demise of the *Enelow-Ettelson* doctrine, which had employed the old distinction between law and equity to determine when a stay could be appealed. *See Ettelson v. Metropolitan Life Ins. Co.,* 317 U.S. 188, 191-92, 63 S.Ct. 163, 164-65, 87 L.Ed. 176 (1942); *Enelow v. New York Life Ins. Co.,* 293 U.S. 379, 382-83, 55 S.Ct. 310, 311-12, 79 L.Ed. 440 (1935). The Supreme Court, applying the *Enelow-Ettelson* doctrine to arbitration law,

---

S.Ct. at 633). We also noted, however, that the finality of an order granting or denying a request to compel arbitration may depend on whether the order was "entered in the course of ongoing actions for legal or equitable relief on the underlying claims." *Id.* We held that because the sole question before the district court was subject to arbitration, its decision was final and appealable. We thus recognized the embedded/independent distinction (without using those labels), but did not need to decide whether an order like the one here, dismissing all the plaintiff's claims in an embedded proceeding with prejudice, is a "final decision." More importantly, we did not attach a "talismanic significance" to the distinction between embedded and independent proceedings, but treated it as a part of our usual inquiry into whether the district court's decision leaves nothing for it to do but execute the judgment.

acknowledged that the continuing application of this doctrine illustrated "the persistence of outmoded procedural differentiations," *Baltimore Contractors v. Bodinger,* 348 U.S. 176, 184, 75 S.Ct. 249, 254, 99 L.Ed. 233 (1955), but it did so nonetheless, "leaving Congress to make such amendments as it may find proper." *Id.* at 185, 75 S.Ct. at 254.

Ultimately, the Court abandoned the *Enelow-Ettelson* doctrine altogether. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 287, 108 S.Ct. 1133, 1142, 99 L.Ed.2d 296 (1988). Soon after, Congress stepped in to "make *Gulfstream,* and the case law that it overruled, largely academic on the arbitration scene" by enacting what is now 9 U.S.C. § 16 as part of the Judicial Improvements and Access to Justice Act of 1988, Pub.L. 100-702, Title X, § 1019(a), 102 Stat. 4642, 4671 (1988). *See* David D. Siegel, Practice Commentary, 9 U.S.C. § 16, at 501 (West 1999).

In short, § 16 was enacted to clear away the deadwood and "furnish a clear rule for appealability of orders relating to arbitration proceedings," not to erect a set of distinctions as esoteric as the law-equity distinction. *Napleton,* 138 F.3d at 1217 (Wood, J., dissenting); *see also Arnold,* 920 F.2d at 1275 n. 5 ("[O]ne purpose in passing the amendment was to give clarity to an area of the law that had become confused, obscure and relied on the procedural posture of the case."); *Campbell v. Dominick & Dominick, Inc.,* 872 F.2d 358, 361 (11th Cir.1989) (quoting a statement by Senator Howell Heflin that "under the prior doctrine, '[t]he appealability of orders that direct arbitration, stay arbitration, or stay judicial proceedings depend[ed] on accidents of procedure that d[id] not respond to any rational needs of either appeals timing or arbitration.' 134 Cong. Rec. S16284, S16309 (daily ed. Oct. 14, 1988)."). The intent behind § 16 is equally evident in the provision's legislative history, especially the Senate Judiciary Committee's statement that "under the proposed statute, appealability does not turn solely on the policy favoring arbitration. Appeal can be taken from ... a final judgment dismissing an action in deference to arbitration. These appeals preserve the general policy that appeals should be available where there is nothing left to be done in the district court." *Arnold,*

920 F.2d at 1274-75 (quoting *Committee on the Judiciary, Section by Section Analysis on S1482,* 100th

Cong., 2d Sess., 134 Cong. Rec. S16284, Oct. 14, 1988) (alteration in original omitted).

Our view that the embedded/independent distinction ought not defeat our jurisdiction in this case is also supported by logic and common sense. The Fifth Circuit's assertion that "[a]n order involving an embedded proceeding is *always* an interlocutory order," *Altman Nursing, Inc.,* 84 F.3d at 771 (emphasis added), is wrong. "While orders compelling arbitration in all independent arbitrability proceedings are necessarily final decisions, it does not logically follow that orders in all embedded arbitrability proceedings are necessarily interlocutory." *McCarthy,* 122 F.3d at 1247 (Pregerson, J., dissenting) (emphasis omitted).

That proposition is confirmed by this case. The district court could have stayed Randolph's claim pending arbitration, but it determined that all of the issues raised were arbitrable. Accordingly, it dismissed the case. Moreover, the dismissal was with prejudice. That is a feature that apparently was not present in most of the cases decided by circuits relying on the embedded/independent distinction. The opinions in those cases either involved dismissals without prejudice or did not clearly state the nature of the dismissal. " 'A dismissal with prejudice clearly is a decision that ends the litigation on the merits and leaves nothing for the court to do but execute a judgment.' " *Morewitz,* 62 F.3d at 1361 (quoting *Nichols v. Mobile Bd. of Realtors, Inc.,* 675 F.2d 671, 673 (5th Cir. Unit B 1982) (quotations omitted)).[5]

Thus, our reading of § 16(a)(3) compels our conclusion that where the district court effectively disposes of all other issues by issuing an order compelling arbitration and dismissing the remaining claims with prejudice, we have appellate jurisdiction over the case. Whatever usefulness the terms "embedded" and "independent" may have in describing some proceedings involving arbitration claims, we decline to follow the same "myopic and talismanic adherence to the independent/embedded distinction," *Napleton,* 138 F.3d

---

[5]We have no occasion to decide whether an appeal from an order compelling arbitration in an embedded proceeding is a "final decision" when the district court dismisses the action *without* prejudice. We do note that this court has said that "dismissals without prejudice may be appealable [under 28 U.S.C. § 1291], [but] they are only appealable if they are 'final orders.' " *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1094 n. 7 (11th Cir.1996) (citation omitted).

at 1217 (Wood, J., dissenting) (quotations and citation omitted), that some circuits have exhibited. Because the district court's dismissal of Randolph's action with prejudice left it with "nothing ... to do but execute the judgment," *Morewitz,* 62 F.3d at 1361 (quotation and citation omitted), we hold that its order compelling arbitration was an appealable "final decision" under 9 U.S.C. § 16(a)(3).

## B. THE ENFORCEABILITY OF THE ARBITRATION CLAUSE

Having determined that we have jurisdiction over this appeal, we now turn to the question whether the TILA precludes the enforcement of the arbitration clause in the retail installment agreement signed by Randolph. Because the arbitration clause signed by Randolph in this case fails to provide the minimum guarantees required to ensure that she can vindicate her statutory rights under the TILA, we conclude that the arbitration clause in this case is unenforceable.

As an initial matter, we recognize that "[a]rbitration ordinarily brings hardships for litigants along with potential efficiency.... In light of a strong federal policy favoring arbitration," some "inherent weaknesses" in the procedural apparatus of an arbitration "should not make an arbitration clause unenforceable." *Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054, 1062 (11th Cir.1998). The Supreme Court has stated, " '[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function.' " *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 28, 111 S.Ct. 1647, 1653, 114 L.Ed.2d 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 637, 105 S.Ct. 3346, 3359, 87 L.Ed.2d 444 (1985).)

Nevertheless, we held in *Paladino* that some procedural flaws present such barriers to a would-be litigant's exercise of his or her statutory rights that they render an arbitration clause unenforceable. "When an arbitration clause has provisions that defeat the remedial purpose of [a] statute, ... the arbitration clause is not enforceable." *Paladino,* 134 F.3d at 1062 (citation omitted). As the Tenth Circuit has stated,

> As *Gilmer* emphasized, arbitration of statutory claims works because potential litigants have an
> adequate forum in which to resolve their statutory claims and because the broader social purposes

11

behind the statute are adhered to. This supposition[ ] falls apart, however, if the terms of an arbitration agreement actually prevent an individual from effectively vindicating his or her statutory rights. Accordingly, an arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory claims must also provide for an effective and accessible alternative forum.

*Shankle v. B-G Maintenance Management of Colorado, Inc.,* 163 F.3d 1230, 1234 (10th Cir.1999) (citations omitted). While the arbitral forum usually serves as just such an alternative, some barriers of access to that forum may render an arbitration clause unenforceable. *See id.* at 1234 n. 3.

In particular, we held in *Paladino* that forcing a plaintiff to bear the brunt of "hefty" arbitration costs and "steep filing fees" constitutes "a legitimate basis for a conclusion that the [arbitration] clause does not comport with statutory policy." *Paladino,* 134 F.3d at 1062. Thus, we held that an employer's arbitration agreement did not "comport with [the] statutory policy" of Title VII because the plaintiff would have had to pay a filing fee of $2000 to arbitrate her claim of gender discrimination, and might have had to bear at least half the substantial cost of the arbitration. *Id.*

Other courts have raised similar concerns. *See Shankle,* 163 F.3d at 1234-35 & n. 3 (concluding that a "fee-splitting" provision of an arbitration agreement substantially limited an employee's use of the arbitral forum and therefore rendered the arbitration agreement unenforceable); *Cole v. Burns International Sec. Services, Inc.,* 105 F.3d 1465, 1484-85 & n. 12 (D.C.Cir.1997) (requiring an employer to bear the sole costs of an arbitrator's fees where the arbitration was imposed by the employer, and noting but declining to address the question whether an arbitrator's "refusal to waive filing and other administrative fees could preclude enforcement of an arbitration agreement").

The arbitration clause in this case raises serious concerns with respect to filing fees, arbitrators' costs and other arbitration expenses that may curtail or bar a plaintiff's access to the arbitral forum, and thus falls within our holding in *Paladino.* This clause says nothing about the payment of filing fees or the apportionment of the costs of arbitration. It neither assigns an initial responsibility for filing fees or arbitrators' costs, nor provides for a waiver in cases of financial hardship. It does not say whether consumers, if they prevail, will nonetheless be saddled with fees and costs in excess of any award. It does not say

12

whether the rules of the American Arbitration Association, which provide at least some guidelines concerning filing fees and arbitration costs, apply to the proceeding, whether some other set of rules applies, or whether the parties must negotiate their own set of rules.

At oral argument, Green Tree asserted that arbitrations arising under this clause typically do not use the AAA rules, but did not specify what set of rules applies. Nor did Green Tree describe the atypical cases in which the AAA rules do not apply. Green Tree also asserted at oral argument that the arbitrator may apportion the fees of the arbitration in his award, but that provides no guarantee that a consumer successfully arbitrating under this clause will not be saddled with a prohibitive costs order, despite the small sum that is likely to be the object of the dispute in arbitrations of this kind. Finally, Green Tree stated to us that no filing fees are required, but the arbitration clause itself says nothing about that, and whether there are filing fees is likely to depend on who conducts the arbitration, something the arbitration clause is silent about.

Accordingly, we conclude that the arbitration clause in this case is unenforceable, because it fails to provide the minimum guarantees required to ensure that Randolph's ability to vindicate her statutory rights will not be undone by steep filing fees, steep arbitrators' fees, or other high costs of arbitration. *See Paladino,* 134 F.3d at 1062 ("When an arbitration clause has provisions that defeat the remedial purpose of the statute, ... the arbitration clause is not enforceable." (citation omitted)).

The facts of this case distinguish it from cases in which other circuits have held that an arbitration agreement was enforceable despite substantial arbitration costs. In *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1, 15-16 (1st Cir.1999), the First Circuit rejected an argument that the New York Stock Exchange's arbitration procedures were unenforceable to arbitrate a Title VII claim merely because plaintiffs could be charged high forum fees.[6] But the court in *Rosenberg* had before it a record suggesting that most successful arbitral claimants were awarded fees and costs; we lack similar information

---

[6]The court did find, however, that the plaintiff should not be compelled to arbitrate her claims, because she was not given adequate notice that her statutory claims would be subject to arbitration. *See Rosenberg,* 170 F.3d at 20-21.

13

about how claimants fare under Green Tree's arbitration clause. Because the clause is silent on the subject of arbitration fees and costs, Randolph might be required to bear substantial costs of the arbitration even if she were to prevail on her TILA claim.

Another distinguishable case is *Doctor's Associates, Inc. v. Stuart,* 85 F.3d 975 (2d Cir.1996). There, the defendants argued that an arbitration agreement was unconscionable and unenforceable because of high filing fees and arbitrators' costs. The Second Circuit held that the agreement was not unconscionable. *See Stuart,* 85 F.3d at 980-81; *see also Doctor's Assocs., Inc. v. Hamilton,* 150 F.3d 157, 163 (2d Cir.1998) (relying on *Stuart* to find an arbitration agreement enforceable in a similar case, where the plaintiff's estimated total costs of arbitration were between $28,000 and $32,000). But the arbitration clause in *Stuart* arose in the context of a commercial franchise agreement, *see Stuart,* 85 F.3d at 977-78, not a small consumer transaction (as in this case) or an employment agreement (as in *Paladino* ). It was challenged on the general grounds that the clause was unconscionable, whereas Randolph argues that the clause in this case prevents her from vindicating specific statutory rights under the TILA.

We conclude that the arbitration clause at issue here is unenforceable. Because we decide the issue on this ground, we need not decide whether the TILA precludes *all* arbitration agreements.

## IV. CONCLUSION

For these reasons, we REVERSE the district court's order and REMAND for further proceedings consistent with this opinion.

14