**Natalie BARON, Plaintiff,**

v.

**BEST BUY CO., INC., a Minnesota corporation; Beneficial National Bank USA, a federal bank, nationally chartered; Union Fidelity Life Insurance Co., Inc., an Illinois corporation; and Virginia Surety Co. a Virginia corporation, Defendants.**

**No. 99–1297-CIV.**

United States District Court, S.D. Florida, Miami Division.

Dec. 1, 1999.

Robert David Hertzberg, Robert Alan Ader, Alan H. Rolnick, Michael Elliot Criden, Michael A. Hanzman, Hanzman Criden Korge Chaykin Ponce & Heis, Miami, FL, for Natalie Baron, Jose Fonseca, Tara Rogers.

Sherril May Colombo, Richard Michael Dunn, Bilzin Sumberg Dunn Price & Axelrod, Miami, FL, Mark D. Wisser, Deborah Palmer, Robins Kaplan Miller & Ciresi, Minneapolis, MN, for Best Buy Co., Inc.

Edward Maurice Mullins, Jose I. Astigarraga, Steel Hector & Davis, Miami, FL, Traci Hope Rollins, Steel Hector & Davis, West Palm Beach, FL, for Beneficial National Bank USA.

Franklin G. Burt, Farrokh Jhabvala, Landon King Clayman, Markham Richard Leventhal, James Frederick Jorden, Jorden Burt Boros Cicchetti Berenson & Jc, Miami FL, for Union Fidelity Life Insurance, Co., Virginia Surety Company, Inc.

### ORDER

JORDAN, District Judge.

For the reasons set forth below, the motions for a stay pending appeal filed by defendants Best Buy Co., Inc., Beneficial National Bank USA, Union Fidelity Life Insurance Co., Inc., and Virginia Surety Co. [DE 63, 64, 75] are GRANTED. All matters in this case are stayed until the Eleventh Circuit either (1) resolves the appeal by the defendants of the order denying their motions to compel arbitration or (2) dissolves the stay.

### I

In connection with its "Best Buy Card" revolving credit plan, Best Buy offers customers the "Payment Maker Protection Plan." The "Payment Maker Protection Plan" provides credit life, disability, property, and unemployment insurance to customers who purchase Best Buy merchandise on the "Best Buy Card." Beneficial National Bank issues and operates Best Buy's revolving credit plan, while Union Fidelity and Virginia Surety offer the various types of insurance provided through the "Payment Maker Protection Plan."

In May of 1999, Natalie Baron, who had purchased merchandise on the "Best Buy

Card" and obtained insurance through the "Payment Maker Protection Plan," filed a class action complaint against Best Buy, Beneficial National Bank, Union Fidelity, and Virginia Surety [DE 1]. The case was assigned to District Judge James L. King.

Ms. Baron's complaint alleged, in relevant part, that Best Buy's "Payment Maker Protection Plan" did not contain required disclosures, and therefore violated the Truth in Lending Act (TILA), 15 U.S.C. §§ 1605(c), 1637(a)–(b), 1640(a); 12 C.F.R. § 226.4 (a part of Regulation Z); and Fla.Stat. §§ 624.605, 626.631, 627.679, 627.682. Ms. Baron sought declaratory, injunctive, and monetary relief.

Before answering the complaint, the defendants moved to compel arbitration of Ms. Baron's claims [DE 18, 19, 20, 23–28]. Ms. Baron opposed the motions to compel arbitration [DE 33], and Best Buy filed a reply memorandum [DE 46].[1] The defendants' motions were based on the arbitration clause in the cardholder agreement sent to Ms. Baron following her credit purchase:

> **Arbitration.** Any claim, dispute, or controversy (whether in contract, tort, or otherwise) arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause or any part thereof or the entire agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the Code of Procedure of the National Arbitration Forum in effect at the time the Claim is filed.... Any participatory arbitration hearing that you attend will take place in the federal judicial district of your residence. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal

---

1. Judge King initially granted Ms. Baron's motion for class certification [DE 43]. After the defendants filed a joint motion in opposition to the order certifying the class [DE 45], Judge King set aside the order without prejudice pending resolution of the defendants' motions to compel arbitration [DE 49].

Arbitration Act, 9 U.S.C. [§§ ] 1–16. Each party shall bear the expense of their respective attorneys' fees regardless of which party prevails. The arbitrator shall apply relevant law and provide written reasoned findings of fact and conclusions of law. The award shall be kept confidential.... THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT, BUT THAT THEY PREFER TO HAVE AN ELECTION TO RESOLVE ANY CLAIMS THROUGH ARBITRATION, AND THAT THEY HEREBY WAIVE THEIR RIGHTS TO LITIGATE CLAIMS IN A COURT UPON ELECTION OF ARBITRATION BY EITHER PARTY.

[DE 26, Butler Affidavit, Attachment 3].

In one of their filings, Union Fidelity and Virginia Surety agreed to pay for any and all fees and costs incurred by Ms. Baron in the arbitration proceedings. Union Fidelity and Virginia Surety also agreed that Ms. Baron was entitled to all remedies provided for in the TILA, including an award of attorneys' fees, if she were to prevail in the arbitration proceedings [DE 51].

Judge King held a hearing on September 17, 1999 [DE 55], and subsequently issued an order denying the defendants' motions to compel arbitration [DE 60]. Judge King concluded (1) that the defendants had failed to demonstrate that the National Arbitration Forum (NAF)—the entity before which the arbitration was to take place—was a "neutral, inexpensive, and efficient forum to determine these claims as required by law;" (2) that it was unclear what procedures the NAF would apply to the dispute, "given the changing nature of the rules [it] adopt[s] and the almost total discretion of the [NAF"s] director to issue or modify any award or rule;" and (3) that the arbitration clause required each party to bear its own attorneys' fees, regardless of which party prevailed, contrary to the remedial provisions of the TILA. Judge King rejected the defendants' argument that the language in the arbitration clause concerning attorneys' fees could be cured through "judicial severance," and also ruled that the arbitration clause was "invalid under the common law doctrine of unconscionability."

After denying the motions to compel arbitration, Judge King transferred the case to me [DE 61]. Several days later, the defendants, pursuant to 9 U.S.C. § 16(a)(1)(B),[2] filed notices of interlocutory appeal from Judge King's order [DE 62, 66, 67]. They also filed motions to stay the case pending the resolution of their appeals [DE 63, 75]. Ms. Baron opposed the motions [DE 71]. On October 20, 1999, the parties presented argument on the motions to stay [DE 90].

On November 16, 1999, the Eleventh Circuit granted the defendants' motions to expedite their appeals, which had previously been consolidated as Case No. 99–14028–E [DE 100]. Pursuant to the expedited briefing schedule, the defendants' initial brief is due on December 7, 1999, and Ms. Baron's answer brief is due 21 days after service of the initial brief.

## II

The defendants' motions for a stay pending appeal present two questions of first impression in the Eleventh Circuit. First, does an appeal under § 16(a)(1)(B) from an order denying a motion to compel arbitration divest a district court of jurisdiction to proceed with the case pending resolution of the appeal? Second, if the district court is not divested of jurisdiction as a result of the § 16(a)(1)(B) appeal, is a stay nevertheless warranted under Federal Rule of Civil Procedure 62(c)?

■ Relying primarily on the divestiture rule set forth in *Braford–Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 505–06 (7th Cir.1997)

---

2. In relevant part, § 16(a)(1)(B) provides that an "appeal may be taken from ... an order ... denying a petition [under 9 U.S.C. § 4] to order arbitration to proceed."

(holding that a non-frivolous appeal from an order denying a motion to compel arbitration requires a stay of all district court proceedings until the appeal is decided), the defendants contend that a stay is mandated because their notices of appeal conferred exclusive jurisdiction on the Eleventh Circuit. Ms. Baron, on the other hand, points to *Britton v. Co-op Banking Group,* 916 F.2d 1405, 1411–12 (9th Cir. 1990) (rejecting the argument that an appeal from an order denying a motion to compel arbitration automatically divests a district court of jurisdiction over the merits of the case), and argues that the defendants cannot satisfy the criteria for a stay under Rule 62(c).

As explained below, I find *Bradford–Scott* persuasive, and conclude that a stay is required while the defendants' expedited appeal is pending. Consequently, I do not address whether the defendants can make the required showing under *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1986), to obtain a stay pursuant to Rule 62(c).

### A

■ "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). As the Eleventh Circuit has explained, once a notice of appeal has been filed, the "district court retains only the authority to act in aid of the appeal, to correct clerical mistakes, or to aid in the execution of a judgment that has not been superseded." *Showtime/The Movie Channel, Inc. v. Covered Bridge Condominium Ass'n, Inc.,* 895 F.2d 711, 713 (11th Cir.1990).

■ In their motions to compel arbitration, the defendants, relying on the arbitration clause in Ms. Baron's cardholder agreement, argued that the NAF was the proper forum for Ms. Baron's claims. Judge King's order, which denied the de-

fendants' motions, is now on appeal. Because the issue before the Eleventh Circuit concerns the very authority of this court to consider Ms. Baron's claims, it makes little sense for the litigation to continue here while the appeal is pending. In the words of the Seventh Circuit:

> Arbitration clauses reflect the parties' preference for non-judicial dispute resolution, which may be faster and cheaper. These benefits are eroded, and may be lost or even turned into net losses, if it is necessary to proceed in both judicial and arbitral forums, or to do this sequentially. The worst possible outcome would be to litigate the dispute, to have the court of appeals reverse and order the dispute arbitrated, to arbitrate the dispute, and finally to return to court to have the award enforced. Immediate appeal under § 16(a) helps to cut the loss from duplication. Yet combining the costs of litigation and arbitration is what lies in store if a district court continues with a case while an appeal under § 16(a) is pending. Cases of this kind are therefore poor candidates for exceptions to the principle that a notice of appeal divests the district court of power to proceed with the aspects of the case that have been transferred to the court of appeals.

*Bradford–Scott,* 128 F.3d at 506. *See also Lummus Co. v. Commonwealth Oil Refining Co.,* 273 F.2d 613, 613–14 (1st Cir.1959) (granting the defendant-appellant's motion to delay discovery pending its appeal of the district court's order staying arbitration: "[A]ppellee makes no satisfactory answer to appellant's contention that a court order of discovery would be affirmatively inimical to appellee's obligation to arbitrate, if this court determines it to have such obligation.... Until it is determined whether this action has been properly brought, appellee should not receive any unnecessary fruits thereof.").

In Ms. Baron's view, the "fair assessment of ... the subject-matter of the [defendants'] appeal is who decides the merits

of the case" [DE 90 at 42]. Yet Ms. Baron posits that, except for revisiting the validity of the arbitration clause, this court could proceed to final judgment as long as doing so would not cause irreparable harm [DE 90 at 71–72]. As noted above, however, it is difficult to conceptualize how (or why) a district court could (or should) proceed with litigation through final judgment, given *Griggs'* principle of divestiture, when the argument on appeal is that the district court is not the proper forum for the resolution of the claims at issue. There are, of course, situations where an interlocutory appeal is properly viewed as collateral to the merits, and where the district court may continue with the case while the appeal is pending. But here the question on appeal concerns the proper forum for Ms. Baron's claims, and if the defendants prevail on appeal, those claims will be handled by the NAF.

To the extent that the Ninth Circuit's opinion in *Britton*, 916 F.2d at 1411–12, concludes that an order denying a motion to compel arbitration is always collateral to the merits, I respectfully disagree. The defendants' claim on appeal in this case is simply "inconsistent with continuation of proceedings in the district court." *Bradford–Scott*, 128 F.3d at 506. "An appeal authorized by § 16(a)(1)(A) presents the question whether the district court must stay its own proceedings pending arbitration. Whether the litigation may go forward in the district court is precisely what the court of appeals must decide." *Id.*

### B

The Ninth Circuit was concerned in *Britton* that a per se stay rule "would allow a defendant to stall a trial simply by bringing a frivolous motion to compel arbitration." 916 F.2d at 1412. That sort of dilatory conduct, however, can be checked by allowing the district court to proceed with the litigation if the appeal from the order refusing to compel arbitration is frivolous. *Bradford–Scott*, 128 F.3d at 506. That is the regime that governs interlocutory double jeopardy appeals in criminal cases, *see Abney v. United States*,

431 U.S. 651, 662 n. 8, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), and there is no reason why it could not be imported into the arbitration context.

In the double jeopardy arena, a claim is not frivolous if it is "colorable," and a claim is "colorable" if "there is some *possible* validity" to it. *Richardson v. United States*, 468 U.S. 317, 322, 326 n. 6, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984) (emphasis added). Ms. Baron argues that the arbitration clause in her cardholder agreement is unenforceable and that the defendants cannot show that they are likely to succeed on appeal [DE 72 at 9–10]. Although I agree with Ms. Baron that, under existing Eleventh Circuit precedent, the defendants face an uphill battle on appeal, I cannot conclude that the defendants' legal arguments concerning the arbitration clause are frivolous.

1

The arbitration clause's language ("[a]ny claim, dispute, or controversy (whether in contract, tort, or otherwise) arising from or relating to this Agreement or the relationships which result from this Agreement") is sufficiently broad to cover Ms. Baron's TILA claims [DE 90 at 49–51]. But the clause expressly requires each party to the arbitration proceeding to bear its own attorneys' fees, regardless of who prevails, and is silent about whether Ms. Baron is responsible for, or can be excused from having to pay, arbitration filing fees and costs. In contrast, the TILA provides for an award of attorneys' fees and costs to a prevailing consumer. 15 U.S.C. § 1640(a)(3). *See Plant v. Blazer Financial Services, Inc. of Georgia*, 598 F.2d 1357, 1365 (5th Cir.1979) ("As a practical matter, the award of attorneys' fees is a critical and integral part of [the TILA]. Because of the small amounts involved, many potential truth-in-lending plaintiffs are either unable to afford an attorney or unable to justify the expense of an attorney.").

The Eleventh Circuit's recent decisions strongly support Judge King's refusal to

compel arbitration of Ms. Baron's TILA claims. These decisions indicate that an arbitration agreement which limits or precludes statutory remedies, or which possibly makes an individual responsible for arbitration fees and costs, is unenforceable. *See Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1062 (11th Cir.1998) (majority opinion of Tjoflat and Cox, JJ.) (holding that an arbitration agreement which insulated the employer from Title VII damages and equitable relief, and which did not require the employer to pay the costs of arbitration, was unenforceable because it did "not comport with statutory policy"); *Randolph v. Green Tree Financial Corp.—Alabama*, 178 F.3d 1149, 1157–58 (11th Cir.1999) (following *Paladino* and refusing to enforce an arbitration clause in a retail installment contract against a TILA plaintiff because the clause said "nothing about the payment of filing fees or the apportionment of the costs of arbitration," and therefore "fail[ed] to provide the minimum guarantees required to ensure that [the consumer's] ability to vindicate her statutory rights w[ould] not be undone by steep filing fees, steep arbitrators' fees, or other high costs of arbitration").

Moreover, *Paladino* seems to foreclose the argument made by the defendants in this case [DE 27 at 13–14] that an offending limitation of remedies clause in an arbitration agreement (here the attorneys' fees provision) can be judicially severed in order to further the federal policy in favor of arbitration.[3] Chief Judge Hatchett, in his separate opinion, expressly rejected the severability argument. *See Paladino*, 134 F.3d at 1058 (separate opinion of Hatchett, C.J.). Chief Judge Hatchett's view, of course, is not controlling, but it appears as though the majority opinion of Judges Tjoflat and Cox implicitly disapproved of the severability argument. Judges Tjoflat and Cox found the arbitration agreement to be unenforceable due to its limitation of remedies and its possible shifting of arbitration fees and costs to the plaintiff. *Id.* at 1062. Had they been persuaded by the severability argument, Judges Tjoflat and Cox would have addressed whether the invalid limitation of remedies clause could have been severed from the rest of the arbitration agreement.

In sum, *Paladino* and *Randolph* do not bode well for the defendants with respect to Ms. Baron's TILA claims. *Randolph*, however, is not final because of a pending suggestion for rehearing *en banc* [DE 81, Exhibit A]. *See* Eleventh Cir.Rule 35–7 (explaining that a suggestion for rehearing *en banc* stays the mandate). Should the Eleventh Circuit grant that suggestion, then the panel's opinion in *Randolph*, which relied in part on *Paladino*, will be vacated, and the matter will be set for *en banc* briefing and oral argument. Given that *Randolph* is not final, the defendants' arguments concerning the arbitration of Ms. Baron's TILA claims cannot be said to be frivolous. Furthermore, it is unclear what effect, if any, the Eleventh Circuit will give to the stipulation by Union Fidelity and Virginia Surety that they will pay for any expenses incurred by Ms. Baron in the arbitration proceedings and that Ms. Baron, if she prevails in the arbitration proceedings, will be entitled to all of the remedies set forth in the TILA, including an award of attorneys' fees [DE 51].

2

In addition to her TILA claims, Ms. Baron brought claims under Florida law against the defendants. In their motions to compel arbitration, the defendants sought to arbitrate both the TILA claims and the state law claims.

■ The Supreme Court has instructed that district courts must "compel arbitration of pendent arbitrable claims when one

---

**3.** Ms. Baron's cardholder agreement states that "[i]f any provision of this Agreement or portion thereof is held invalid, such invalidity shall not affect the other provisions or portions thereof in this Agreement which can be given effect without the invalidity" [DE 26, Butler Affidavit, Attachment 3]. The cardholder agreement further provides that it is governed by federal law *and* Delaware law.

of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Judge King, citing a recent Florida decision, *Powertel, Inc. v. Bexley,* 743 So.2d 570 (Fla.Ct.App.1999), declined to order arbitration of Ms. Baron's state law claims because (1) the arbitration clause was unenforceable as to the TILA claims under *Paladino* and *Randolph,* and because (2) the arbitration clause was invalid under the common law doctrine of unconscionability [DE 60 at 6–7].

As noted earlier, *see* n. 4, Ms. Baron's cardholder agreement provides that it is governed by federal law *and* Delaware law. Under federal law, it appears that an arbitration clause is unconscionable if it is inherently unfair or oppressive. *See Driscoll v. Smith Barney, Harris, Upham, & Co.,* 815 F.2d 655, 658–59 (11th Cir.), *vacated and remanded,* 484 U.S. 909, 108 S.Ct. 253, 98 L.Ed.2d 211 (1987), *on remand,* 841 F.2d 1059 (11th Cir.1988). Under Delaware law, an arbitration clause in an adhesion contract (like Ms. Baron's cardholder agreement) is not unconscionable per se. *See Graham v. State Farm Mutual Automobile Ins. Co.,* 565 A.2d 908, 911–12 (Del.1989). As Ms. Baron acknowledged at the hearing on the motions to stay [DE 90 at 65–66], Judge King did not cite to or apply federal law or Delaware law in addressing the question of unconscionability. Instead, he relied on Florida law. Because Ms. Baron's cardholder agreement called for the application of federal law and Delaware law, and because it is not clear that Florida law is consistent with federal law and Delaware law, the defendants' arguments concerning the arbitrability of Ms. Baron's state law claims are not frivolous.

### III

The defendants' motions for a stay pending their expedited § 16(a)(1)(A) appeal of Judge King's order are granted on the authority of the Seventh Circuit's decision in *Bradford–Scott.* All matters in this case are stayed until the Eleventh Circuit either (1) resolves the appeal by the defendants of the order denying their motions to compel arbitration or (2) dissolves the stay.